UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re                                                                                          Chapter 13
James E. Ford,                                                                        Case No. 07-28188-svk
         Debtor.

**Memorandum Decision on Nissan Motor Acceptance's Objection to Confirmation**

Nissan Motor Acceptance ("Nissan") has objected to confirmation of the Debtor's Chapter 13 plan based on the unnumbered paragraph[1] of 11 U.S.C. § 1325(a) that was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). The primary issue in this case is whether a car that does not qualify for 910-treatment can qualify as an "other thing of value" under the hanging paragraph.

**Facts**

James E. Ford ("Debtor") filed a Chapter 13 petition on October 15, 2007. The Debtor owns two vehicles: a 2007 Nissan Maxima purchased on August 27, 2007 and a 2007 Toyota Camry. The Nissan Maxima is the subject of this dispute. Although the contract payments on the Maxima are $737 per month, the Debtor proposes to pay Nissan only $420 per month, by bifurcating Nissan's claim into secured and unsecured portions, and paying the allowed secured claim (the value of the vehicle) in full through the plan. Nissan has objected to confirmation, because such bifurcation of claims is not permitted if the collateral qualifies under the hanging paragraph.

At the hearing held on Nissan's Objection, the Debtor testified that the dealer knew that the Debtor was purchasing the Maxima for his fiancée, Debra Davis. The original intent was for Ms. Davis to purchase the car, but she did not qualify for financing. The Maxima was therefore titled in the Debtor's name, and the Debtor signed the loan documents to purchase the vehicle. However, according to the uncontested testimony, all of the parties understood that Ms. Davis would make the payments and primarily drive the vehicle. The Debtor's Schedule I shows that Ms. Davis contributes $1,050 per month to the Debtor's income. At the time of the hearing, Ms. Davis was working in Nashville, Tennessee and had possession of the vehicle. Although purchased two months prior to the bankruptcy filing, the Debtor admitted that neither he nor Ms. Davis made any payments on the contract for the Nissan Maxima. It is undisputed that Nissan has a purchase money security interest in the vehicle. The Court found preliminarily that the Maxima was not purchased for the Debtor's personal use, because it was purchased for Ms. Davis' personal use. Accordingly, the Maxima is not a so-called "910-car" as described in the

---

[1] As explained by Judge Markell in *In re Trejos,* "[b]ecause of the odd placement in the statute as enacted, this text has no clear home in Section 1325(a), and thus has been referred to as the 'hanging paragraph,' which is the designation this opinion will use." 352 B.R. 249, 253 (Bankr. D. Nev. 2006).

first clause of the hanging paragraph.[2] The Court asked the parties to brief the issue of whether the Maxima falls under the "any other thing of value" provision of the second clause of the hanging paragraph.

## **Analysis**

Prior to the enactment of BAPCPA and the addition of the hanging paragraph, debtors were able to use 11 U.S.C. § 506(a) in conjunction with 11 U.S.C. § 1322(b)(2) to bifurcate secured claims into secured and unsecured portions. Debtors could "strip down" the secured portion of a claim to the value of the collateral. Any amount the debtor owed above and beyond the value of the collateral would be included in the Chapter 13 plan as an unsecured claim. *In re Bray*, 365 B.R. 850, 854 (Bankr. W.D. Tenn. 2007). As a result of the addition of the hanging paragraph, for the purpose of a Chapter 13 plan, § 506 of the Bankruptcy Code is inapplicable to certain secured loans. *See In re Wright*, 492 F.3d 829 (7th Cir. 2007).

"The starting point in discerning congressional intent is the existing statutory text… It is well established that 'when the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms.'" *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (citation omitted) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). As Judge Markell points out, "ambiguity tends to be in the eye of the interpreter" when engaging in statutory analysis. *In re Trejos,* 352 B.R. 249, 258 (Bankr. D. Nev. 2006). This Court does not find the language of the hanging paragraph ambiguous, although its meaning is subject to "good faith dispute among litigants." *Id.*

The hanging paragraph provides "[s]ection 506 shall not apply to a claim…if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing…and the collateral for that debt consists of a motor vehicle (as defined in § 30102 of title 49) acquired for the personal use of the debtor, or if the collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing." The first part of the hanging paragraph essentially sets forth four requirements necessary to prevent the bifurcation of certain secured claims. *See In re Rowley,* 348 B.R. 479 (Bankr. S.D. Ill. 2006). The creditor's claim cannot be bifurcated into secured and unsecured portions if (1) the claim is secured by a purchase money security interest; (2) incurred within the 910-day period before the petition; (3) the collateral is a motor vehicle; and (4) the vehicle was acquired for the personal use of the debtor. *Id.* at 481.

In this case, three of the four requirements are clearly satisfied. The Maxima is a qualifying motor vehicle purchased within the 910-day period preceding the petition date, and the Debtor granted Nissan a purchase money security interest in the Maxima. However, the undisputed testimony shows that the vehicle was acquired for the personal use of the Debtor's fiancée with the consent of the car dealer; and the Debtor made the purchase with the understanding that when she improves her credit score, his fiancée will become the owner of the

---

[2] A "910-day" vehicle is a motor vehicle secured by a purchase money security interest that was acquired for the debtor's personal use within 910 days preceding the filing of the bankruptcy petition." *In re Curtis,* 345 B.R. 756, 758 n. 4 (Bankr. D. Utah 2006).

vehicle responsible for the payments.  It appears that this vehicle was not purchased for the personal use of the Debtor.

### **"Personal use of the debtor" under the Hanging Paragraph**

A number of courts have examined the language of the hanging paragraph as it relates to interpretation of the "personal use of the debtor" clause.  A few courts take a business/non-business-centered approach, while according to *In re Bethoney,* the majority of courts define "personal" as focused on who may use the vehicle. 2008 Bankr. LEXIS 76 (Bankr. D. Mass. Jan. 17, 2008), at *11 n.18 (acknowledging that the majority of courts interpreted "personal" to define who may use the vehicle rather than for what purpose the vehicle may be used).  Many courts weighing in on the meaning of "personal use of the debtor," have held that the clause does not apply to use by anyone other than the debtor, whether that is a spouse, child, and in some cases, even a co-debtor. *See In re Jackson,* 338 B.R. 923, 925-26 (Bankr. M.D. Ga. 2006) (debtor's personal use did not include use by non-debtor wife); *In re Lewis,* 347 B.R. 769 (Bankr. D. Kan. 2006) (debtors' personal use did not include vehicle acquired for use of independent adult child); *In re Solis,* 356 B.R. 398 (Bankr. S.D. Tex. 2006) (hanging paragraph did not apply to vehicle acquired for exclusive use of debtor's son); *In re Press,* 2006 Bankr. LEXIS 2296 (Bankr. S.D. Fla. July 26, 2006) (hanging paragraph not applicable where debtor husband acquired vehicle for personal use of co-debtor wife).

The facts of *In re Lewis* are relatively analogous to the facts here because that case involved a vehicle used by an individual that was neither a spouse of the debtor nor a co-debtor.  The court declined to stretch the phrase "personal use of the debtor" to include a vehicle purchased for the debtors' adult daughter.  The adult child in *Lewis*, similar to the Debtor's fiancée in this case, did not reside with the debtors.  Similar to Nissan here, the creditor in *Lewis* asked the court to construe the hanging paragraph as if it applied to a vehicle "acquired for personal use" without regard to who would be the user.  The court rejected this interpretation because it did not give effect to every clause and word of the statute.  *In re Lewis,* 347 B.R. at 772-73 (citing *Duncan v. Walker,* 533 U.S. 167, 174 (2001)).  This Court agrees that the proper construction of the hanging paragraph must afford meaning to the words "of the debtor" after the term "personal use."[3]

Other courts have applied a "user-focused" interpretation and found that a vehicle purchased for the use of someone *other than the debtor* does not constitute a vehicle acquired for the personal use of the debtor. *See In re Adams,* 2007 Bankr. LEXIS 616 (Bankr. M.D. Ga. Mar. 1, 2007) (vehicle acquired for use of debtor's wife was not personal to the debtor and therefore

---

[3] Notably, the *Lewis* court also held that the debtors' Chapter 13 plan could not be confirmed because the proposed cram down of the loan on the daughter's car violated the requirement that the plan be in good faith. 347 B.R. at 773. Moreover, the court lifted the stay, finding that the debtors conceded they had no equity in the vehicle, and the daughter's vehicle was not necessary for their reorganization.  Similarly, the court in *Solis* held that the plan could not be confirmed because providing for cramdown on a secured vehicle in which the debtor had no equitable interest was not in good faith. 356 B.R. at 414.  Nissan has not raised a good faith objection to the Debtor's plan, and this Court does not need to reach this issue, at least at this time.

3

was not eligible for 910-treatment); *In re Davis,* 2006 Bankr. LEXIS 3465 (Bankr. M.D. Ala. Dec. 8, 2006) (vehicle acquired for debtor's husband not for personal use of the debtor ).

Nissan asks the Court to find that the Debtor's purchase of the Maxima for his fiancée falls within the purview of family and household use, and thus, it was acquired for the "personal use of the debtor." When the debtor in question is a member of a family unit, some courts interpret "personal use of the debtor" more broadly, expanding "personal use" to include family and household uses. *See In re Phillips,* 362 B.R. 284 (Bankr. E.D. Va. 2007) (debtor's use of vehicle for family and household purposes was non-business and thus personal); *In re Counts,* 2007 Bankr. LEXIS 3070 (Bankr. D. Mont. Sept. 6, 2007); *In re Bolze,* 2006 Bankr. LEXIS 2027 (Bankr. D. Kan. Aug. 31, 2006) (disagrees that a vehicle used for household or family use cannot by definition also be used for personal use). It is possible to distinguish the facts of the present case from the "family and household use" line of cases because the Debtor rarely, if ever drives the Maxima, Ms. Davis does not reside in the household of the Debtor, is not the Debtor's dependent, and as his fiancée of over two years, she is not yet an official member of the Debtor's family.

Moreover, a number of courts have rejected the broad point of view expressed in *Phillips, Counts* and *Bolze. See Sovereign Bank, F.S.B. v. Finnegan (In re Finnegan),* 358 B.R. 644 (Bankr. M.D. Pa. 2006) (personal use of the debtor is distinct from personal use of a debtor's household or his dependents); *In re Jackson,* 338 B.R. 923, 925-26 (Bankr. M.D. Ga. 2006) ("'Personal' is defined as '[o]f or relating to a particular person; private.' In this case, the vehicle must have been acquired for the use of a particular person--Debtor--for the hanging paragraph to apply"). These cases find significance in the omission of the phrase "family or household," in the hanging paragraph. For example, the Bankruptcy Code defines "consumer debt" under § 101(8) as debt incurred by an individual primarily for "personal, family or household" purpose. As Nissan acknowledges in its brief, Congress did not use the word "consumer" in the hanging paragraph. On Congressional intent, the court in *In re Press* noted that "[w]hen Congress wants to include family and household use within the scope of the Bankruptcy Code, it knows how to do so, and indeed, did so in BAPCPA amendments to § 506(a)(2)" involving valuation of certain property. *In re Press,* 2006 Bankr. LEXIS 2296, at *2. Determining that §§ 365(d)(5), 507(a)(7) and 522 also contain the terms "family or household," the court in *Press* concluded that the omission of "family or household" from the hanging paragraph means as a matter of statutory construction that the phrase 'personal use' standing alone has a different meaning. *Id.* (*citing United States Nat'l Bank v. Indep. Ins. Agents of Am.,* 508 U.S. 439 (1993)).

Based on the above analysis, by giving meaning to all of the words within the hanging paragraph (personal use *of the debtor*), but being careful not to add words that are not there (personal, *family or household* use), this Court holds that the Debtor's Maxima does not qualify for 910-day treatment because the Debtor acquired it for the personal use of his fiancée. The question remains whether the vehicle could qualify as "any other thing of value" under the second part of the hanging paragraph since the Debtor purchased the Maxima within one year of the petition.

4

## "Other thing of value" under the Hanging Paragraph

While the issue is apparently one of first impression in this district, courts in other jurisdictions have addressed the "other thing of value" clause in the hanging paragraph. It is relatively well-settled that to prevent the bifurcation of its claim, the creditor must have a purchase money security interest whether the collateral is a "910-day vehicle" or "any other thing of value." *See In re Curtis,* 345 B.R. 756 (Bankr. D. Utah 2006); *In re Quevedo,* 345 B.R. 238 (Bankr. S.D. Cal. 2006). The issue often arises in the "negative equity" cases, in which creditors who financed vehicles purchased within one year have argued that if their claim does not qualify for 910-claim status because the purchase-money security interest does not secure the entire debt, then the claim should be considered secured by another thing of value. *See In re Pajot,* 371 B.R.139 (Bankr. E.D. Va. 2007) (citing *In re Ellegood,* 362 B.R. 696 (Bankr. E.D. Va. 2007)). *See also In re Curtis, supra*; *In re Parish,* 2006 Bankr. LEXIS 1205 (Bankr. M.D. Fla. Mar. 10, 2006) (holding that under the second part of the hanging paragraph, it is necessary that a creditor hold a purchase money security interest in the collateral, purchased within 1-year of the petition, consisting of anything of value (other than motor vehicle) in order for § 506 not to apply to such claim).

Nissan and the Trustee cite two cases in support of their position that the second part of the hanging paragraph should apply here, *In re Quevedo,* 345 B.R. 238 and *In re Curtis,* 345 B.R. 756. *Quevedo* involved a non-purchase money loan secured by the debtor's vehicle that was made about nine months before the petition. The court held that "the hanging paragraph protects only purchase money security interests. The hanging paragraph provides a longer 910-day period of protection for all purchase money security interests in a vehicle. All other personal property purchase money security interests receive a shorter 1-year period of protection if the collateral has value." *In re Quevedo,* 345 B.R. at 245. *Curtis* concerned a security interest in a semi-truck tractor that did not qualify as a "motor vehicle" under the definition in the hanging paragraph. The *Curtis* court concluded that the plain language of the statute requires a creditor to have a purchase money security interest in either type of collateral mentioned in the hanging paragraph to negate the effect of § 506. The facts of *Quevedo* and *Curtis*, the only cases upon which Nissan and the Trustee rely, are not analogous to this case. *Quevedo* dealt with a non-purchase money loan, and the analysis in *Curtis* did not even concern a motor vehicle. Furthermore, neither *Quevedo* nor *Curtis* specifically analyze whether the second portion of the hanging paragraph applies to an automobile like the Maxima, but rather suggest that the hanging paragraph has two separate categories of collateral.

Many courts have recognized that the hanging paragraph indeed creates two protected categories of debt: motor vehicles and all other things of value. ("The hanging sentence first requires identification of what the collateral 'consists of.' The hanging sentence has different rules for two classes of collateral –'motor vehicle' or 'any other thing of value.'") *In re Hayes,* 376 B.R. 655, 664 (Bankr. M.D. Tenn. 2007); *In re Balsinde,* 2007 Bankr. LEXIS 4058, at *7 (Bankr. S.D. Fla. Nov. 29, 2007) (citing *In re Hickey,* 370 B.R. 219, 221 (Bankr. D. Neb. 2007)); *In re Pajot, supra,* 371 B.R. at 157 (distinction between the 910-day period and the 1-year period is the type of collateral); *In re Ellegood,* 362 B.R. 696; *In re Parish,* 2006 Bankr LEXIS 1205. In *Hayes*, Judge Lundin stated that the analysis of the hanging paragraph begins with identification of the collateral as "Congress made a policy decision to treat motor vehicle

collateral differently than any other thing of value." 376 B.R. at 665. He set forth two separate sets of requirements, one for motor vehicles and another for "any other thing of value,"[4] and further noted that the "collateral-specific distinction in the hanging sentence is evidence [of this] Congressional intent to treat motor vehicle collateral differently from any other collateral." *In re Hayes,* 376 B.R. at 664. Essentially Judge Lundin's analysis suggests that the categories of motor vehicles and other things of value are mutually exclusive.

Relying on the rule of statutory construction that the specific governs over the general, the court in *In re Balsinde* held that the second portion of the hanging paragraph does not apply to motor vehicles. 2007 Bankr. LEXIS 4058. Similar to our case, in *Balsinde*, the "personal use" of the motor vehicle was in question. Therefore, the court engaged in the analysis of whether a car that does not qualify for 910-treatment can qualify for the "other thing of value" treatment under the hanging paragraph. Under a plain reading of the statute, the first section of the hanging paragraph specifically applies to debts when the "collateral for that debt consists of a motor vehicle." Then the second section of the hanging paragraph applies to debts when the "collateral for that debt consists of any other thing of value." The court in *Balsinde* concluded that the word "other" is one that connotes differentiation, as it distinguishes between the motor vehicles covered in the first section and any other type of collateral governed by the second section. 2007 Bankr. LEXIS 4058, at *6; *See also In re Pajot, supra,* 371 B.R. at 157 (distinction between the 910-day period and the 1-year period is the type of collateral).

Finding the language of the hanging paragraph "unambiguous," the court in *In re Parish,* held that "[t]he second portion of the Amendment is not implicated because the Creditor has a purchase money security interest in a *vehicle,* as opposed to 'any other thing of value.'" 2006 Bankr. LEXIS 1205, at *3. Citing *In re Parish,* the court in *In re Ellegood* held that collateral "other than a motor vehicle" is excluded from the provisions of § 506 of the Bankruptcy Code if the debt is incurred within one year prior to the bankruptcy filing. 362 B.R. at 704. The reasoning of *Balsinde, Parish,* and *Ellegood* directly supports the proposition that the second clause of the hanging paragraph does not apply to motor vehicles, while the cases cited by Nissan and the Trustee do not really hold that a motor vehicle that flunks the "personal use" test can qualify as another thing of value under the hanging paragraph.

### **Conclusion**

Since Nissan has a purchase money security interest in a *vehicle* and not "any other thing of value," the second portion of the hanging paragraph does not apply, and since the undisputed testimony proved that the vehicle was not purchased for the personal use *of the Debtor*, the first portion of the hanging paragraph is not implicated. Accordingly, Nissan's claim does not qualify for treatment under the hanging paragraph, and § 506 is available to the Debtor to bifurcate the claim. However, the proposed strip down of the lien on a claim secured by a brand new vehicle that the Debtor does not even drive, while permissible under the hanging paragraph, may well

---

[4] There are three requirements to protect a motor vehicle from bifurcation: (1) creditor has a purchase money security interest; (2) the debt was incurred within the period of 910 days preceding the petition; and (3) the motor vehicle was acquired for personal use of the debtor. There are two requirements to protect "any other thing of value" from bifurcation: (1) a purchase money security interest; and (2) the debt was incurred within one year preceding the petition. *See In re Hayes,* 376 B.R. at 664.

6

violate another confirmation requirement. Nissan's Objection to confirmation is overruled, but without prejudice to Nissan's seeking relief from the stay to reclaim the vehicle or to object to confirmation on the grounds that the plan is not proposed in good faith.

Date: April 29, 2008

By the Court:

_____
Susan V. Kelley
U.S. Bankruptcy Judge